# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| KAREN ARNOLD, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:23-cv-00231-JMG |
| | : | |
| CHRISTINE E. WORMUTH | : | |
| SECRETARY OF THE ARMY, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**GALLAGHER, J.**                                                        **March 14, 2025**

### I.    OVERVIEW

Plaintiff Karen Arnold alleges she was discriminated against on account of her age and disabilities and subjected to a hostile work environment while employed as an attorney for the Army at two different locations. Specifically, Plaintiff claims she was treated more harshly than other employees, required to submit medical reports immediately after visits with health care providers, had her medical information shared with an outside physician without her consent, and was ridiculed for her use of sick leave, tardiness to work, and motivations in failing to timely report her husband's new job with an Army contractor. The Court finds that the alleged conduct of Plaintiff's Army supervisors, while offensive, was not sufficiently severe or pervasive to alter the conditions of her employment. No reasonable jury could return a verdict for Plaintiff on her hostile work environment claim. Defendant's motion for summary judgment (ECF No. 47) is granted.

### II.    BACKGROUND

Plaintiff worked as an attorney for the United States Army from 2005-2017. Def.'s Statement of Undisp. Material Facts ("SUMF"), ECF No. 47-2, at ¶¶ 17, 296. During this time,

Plaintiff's first position was with the Tobyhanna Army Depot ("Depot") in Pennsylvania from 2005 until 2012 where she was mainly responsible for defending the Depot in equal opportunity matters filed by Depot employees and reviewing contracts. *Id*. at ¶ 23; Pl.'s Statement of Disp. Material Facts ("SDMF"), ECF No. 50-3, at ¶ 23. Plaintiff alleges that shortly after starting at the Depot, she was subjected to a hostile work environment where she was discriminated against because of her age and disability. SUMF at ¶ 19; SDMF, at ¶ 18. Both Plaintiff and her supervisor at the Depot, Martha Verbonitz, were over the age of forty during Plaintiff's term of employment at the Depot. SUMF, at ¶¶ 2, 25. Prior to joining the Army, Plaintiff was diagnosed with a series of health complications including "Sjogren's Syndrome, temporomandibular joint disease, gastroesophageal reflux disease, and sleep apnea." *Id*. at ¶ 4. The parties agree that "[l]ike [Plaintiff], Verbonitz has conditions that limit[] major life activities, namely arthritis and scoliosis." *Id*. at ¶ 26.

Employees at the Depot observed multiple instances of conflict between Verbonitz and Plaintiff, including Plaintiff reporting Verbonitz for being too strict and Verbonitz being tougher on Plaintiff than other employees. *Id*. at ¶¶ 45, 47, 49. Plaintiff, however, claims that "[m]ost of Verbonitz' discriminatory activity against [her] was purposely hidden behind a closed office door, out of the view/earshot of a wider audience in order to preserve deniability." SDMF, at ¶ 51. Specifically, Plaintiff alleges Verbonitz harassed her about her use of sick leave for medical appointments or migraines, failure to report a potential conflict of interest with her husband's new job, and tardiness in arriving on time for work instead of five minutes early. *See* SDMF at ¶¶ 60, 94, 129, 149. Plaintiff remained employed at the Depot until she learned of a vacancy at the Surface Deployment and Distribution Command ("SDDC") which would be considered a promotion. *See*

SUMF, at ¶¶ 78, 181. Plaintiff applied for and was offered this position with the assistance of a positive recommendation from Verbonitz. *Id*. at ¶ 181.

Plaintiff began her employment with the SDDC on January 29, 2012. *Id.* at ¶ 214. Plaintiff worked in person at the Military Ocean Terminal Sunny Point in North Carolina for three years until she suffered a work-related injury to her left foot and was approved to telework. *Id*. at ¶¶ 220-221, 228. Plaintiff's supervisor, Charles Hayes, was physically located at the SDDC main law office at Scott Air Force Base in Illinois during this time. *Id*. at ¶¶ 219, 223. Among other things, Hayes was responsible for supervising Plaintiff's injury-related worker's compensation and ensuring she was being paid properly, which required him to collect medical documentation from her. *Id*. at ¶ 265. While she was approved to telework, Plaintiff relocated to Bethlehem, Pennsylvania to undergo multiple corrective surgeries on her foot. Pl.'s Brief in Opp. to Mot. for Summ. J ("ECF No. 50-1"), at 2. The parties dispute whether Plaintiff's period of telework was intended to be temporary. SUMF, at ¶¶ 230-31; SDMF, at ¶¶ 230-31. In the spring of 2015, Plaintiff received notice that the SDDC was being restructured, and she would need to relocate to the Scott Air Force Base if she intended to remain employed by the SDDC. SDMF, at ¶ 249. Plaintiff made a request for a disability accommodation to allow her to permanently telework from Pennsylvania. SUMF, at ¶ 271. However, her request was denied because the EEO determined that Plaintiff "could perform the essential functions of her job in person at the Scott Air Force Base with accommodations that the [SDDC] was willing to offer." *Id*. at ¶ 275. Plaintiff ultimately accepted this reassignment to relocate in April of 2016. *Id*. at ¶ 286; SDMF, at ¶ 286. However, Plaintiff remained in Pennsylvania and used up her accrued leave, then, once that was exhausted, failed to report for duty. SUMF, at ¶¶ 290-91. As a result, she was terminated from employment in August of 2017. *Id*. at ¶ 295.

Plaintiff filed suit against Defendant in this Court on January 17, 2023, alleging failure to accommodate her disability, promulgation of a hostile work environment, disparate treatment, unequal terms and conditions of employment, and retaliation. Compl., ECF No. 1 ¶ 9. On October 31, 2023, this Court granted Defendant's motion and dismissed nearly all of Plaintiff's claims but granted her leave to refile her discrimination claims pending the resolution of her appeal before the MSPB. *See* ECF No. 14, at 9. Plaintiff's second amended complaint was filed on December 21, 2023, and raises two counts of hostile work environment, one against the Depot and one against the SDDC. ECF No. 19. Before the Court is Defendant's motion for summary judgment. ECF No. 47.

### III.    LEGAL STANDARD

"Rule 56(c) provides that the trial judge shall then grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Essentially, the Court must analyze "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). At this stage of litigation, all facts presented are viewed in the light most favorable to the nonmoving party. *Daniels v. City of Pittsburgh*, 2023 WL 2707178, at *2 (3d Cir. Mar. 30, 2023).

"To withstand a motion for summary judgment under Federal Rule of Civil Procedure 56, 'a plaintiff ... must point to concrete evidence in the record that supports each and every essential

element of his case.'" *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995)). "Although we view all facts in the light most favorable to a plaintiff opposing summary judgment and draw all reasonable inference in that party's favor, a plaintiff who reaches the summary judgment stage may no longer 'rest upon the mere allegations or denials of his pleadings.'" *Id*. (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268 (3d Cir. 2014)). "'Conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'" *Duckett v. Dep't of Health & Hum. Servs.*, 2019 WL 3216612, at *3 (E.D. Pa. July 17, 2019) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)).

## IV.   ANALYSIS

Plaintiff alleges she faced discrimination from Defendant because of her age and disability which resulted in a hostile work environment in violation of Title VII of the Civil Rights Act of 1964. "To succeed on a hostile work environment claim, the plaintiff must prove 1) the employee suffered intentional discrimination because of his/her [age and/or disability], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability," meaning that the Army is responsible.[1] *Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 167 (3d Cir. 2013). "'To determine whether an environment

---

[1]    The parties incorrectly assert that Plaintiff's claims are governed by the burden-shifting framework in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973).  The Third Circuit has declined to extend the application of this framework to claims of hostile work environment because "there can be no legitimate justification for a hostile work environment." *Moody v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 213 n.11 (3d Cir. 2017); *Jarmon v. Trader Joe's Co.*, 660 F. Supp. 3d 357, 365 (E.D. Pa. 2023). Therefore, the Court must only decide whether Plaintiff has established a prima facie case of hostile work environment.

is hostile, a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Nitkin*, 67 F.4th at 570 (quoting *Mandel*, 706 F.3d at 168).

### A.  Plaintiff's Disabilities

As a threshold matter related to the first element of a hostile work environment claim, Defendant disputes whether Plaintiff has a disability under the ADA's definition.[2] "A plaintiff qualifies as 'disabled' under the ADA if he: (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *D'Agostino v. Kendall*, 2021 WL 4860095, at *6 (D.N.J. Oct. 19, 2021) (citing 42 U.S.C. § 12102(2)). "The question of whether an individual meets the definition of disability under this part should not demand extensive analysis," because the statute is to be construed in favor of the party claiming to be disabled. *Woods v. AstraZeneca Pharms., L.P.*, 659 F. Supp. 3d 512, 532-33, 535 (M.D. Pa. 2023) (citing 29 C.F.R. § 1630.1).

The relevant question here is whether Plaintiff has one or more physical impairments that substantially limit her major life activities. Plaintiff alleges two physical impairments she faced prior to and beyond the term of her employment for Defendant. First, Plaintiff claims she is afflicted with Sjogren's syndrome "which is an autoimmune disease affecting the mucus producing glands of the human body." ECF No. 50-1, at 7. As a result of this impairment, she experiences pain from inflammation in her muscles and joints and must regularly use eye drops and humidification to retain moisture. *Id*.  Plaintiff also suffers from temporomandibular joint

---

[2]    It is uncontested that Plaintiff's age at all relevant times of employment for the Army was above the minimum requirement for a claim of age discrimination, forty years old. Def.'s Brief in Supp. of Mot. for Summ. J. ("ECF No. 47-1"), at 13; ECF No. 50-1, at 7.

syndrome "which causes her headaches and periodic locking or dislocation of her jaw." *Id*. at 8. Defendant's brief disputes Plaintiff's ability to prove she was limited in major life activities, but effectively concedes this same point in her statement of facts. ECF No. 47-2, at ¶ 26 ("Like Arnold, Verbonitz has conditions that limit[] major life activities"). The 2008 amendments to the ADA provide that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Plaintiff maintains that her mobility, ability to chew properly, and ability to open and close her mouth have been impacted by these conditions. ECF No. 50-1, at 3. The Court, in construing the definition of disability broadly in Plaintiff's favor, finds that she has sufficiently alleged the major life activities of eating, working, and performing manual tasks have been substantially limited by the headaches, lockjaw, and inflammation caused by her Sjogren's syndrome and TMJ. Plaintiff argues she suffered from one additional disability beginning in 2014 after she underwent multiple surgical procedures to correct a posterior tendon tear. ECF No. 50-1, at 10-11. As a result of these procedures, Plaintiff continues to experience regular pain in her left foot and is unable to stand or walk for more than thirty minutes a day. *Id*. at 11. The Court finds this impairment also constitutes a disability under the ADA because it substantially limits her ability to stand or walk, both major life activities. However, this disability is only relevant to a portion of Plaintiff's term of employment at the SDDC and not to her employment at the Depot.

### B. Timeliness

As a secondary matter, Defendant argues that discrete instances of discrimination raised by Plaintiff are outside the Court's review because they were not timely exhausted. ECF No. 47-1, at 11. Defendant is referring to the rule governing federal employees' Title VII claims which

requires the employee to "initiate contact with an EEO counselor within forty-five days of the matter alleged to be discriminatory or, in the case of personnel action, within forty-five days of the effective date of the action." *Kahriger v. Becerra*, 2024 WL 2136011, at *4 (E.D. Pa. May 13, 2024) (citing 29 C.F.R. § 1614.105(a)(1)). However, Plaintiff points out a distinction between discrete instances of discrimination and claims of hostile work environment. "[A] hostile work environment claim is a series of separate acts that, when viewed together, amount to an unlawful employment practice. *Mandel,* 706 F.3d at 165. Thus, the entire claim is actionable if one act contributing to the hostile work environment falls within the forty-five-day window." *Kahriger*, 2024 WL 2136011, at *4 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). Here, in her case against the Depot, Plaintiff initiated contact with an EEO counselor on January 27, 2012. SUMF, at ¶ 326. Arnold has alleged at least three discriminatory acts which occurred within forty-five days of her contact with the EEO counselor. *Id.*, at ¶ 328. In her case against the SDDC, she has also alleged three instances of discrimination which occurred within forty-five days of her contact with an EEOC counselor on June 11, 2015. *Id.*, at ¶ 354. Therefore, Plaintiff's hostile work environment claims are both timely and actionable, and the Court may consider all proffered instances of discrimination, even those which have occurred outside this forty-five-day period. *See Nat'l R.R. Passenger Corp,* 536 U.S. at 105 ("We also hold that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.").

### C.  Plaintiff's Prima Facie Case of Hostile Work Environment

Moving on, the Court must determine whether Plaintiff has provided sufficient facts for a reasonable jury to infer that she was discriminated against in both her positions for the Army because of her age and disabilities. To establish an inference of discrimination, she must

demonstrate that her age and disability were a "substantial factor" in the alleged discriminatory actions she endured. *Ponton v. U.S. Dep't of Just. /U.S. EEOC*, 2010 WL 11595302, at *9 (E.D. Pa. Mar. 9, 2010), *aff'd sub nom. Ponton v. AFSCME*, 395 F. App'x 867 (3d Cir. 2010); *Brickhouse v. Sch. Dist. of Philadelphia*, 2024 WL 1321007, at *10 (E.D. Pa. Mar. 27, 2024) (quoting *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 277 (3d Cir. 2001)) ("'The proper inquiry at' summary judgment is 'whether a reasonable factfinder could view the evidence as showing that [the employee's] treatment was attributable to her [age or disability].'"). A plaintiff is not required to present direct proof of discriminatory intent, only sufficient facts from which a factfinder could infer that the plaintiff would not have been treated in the same manner had they not been a member of that protected class. *Abramson*, 260 F.3d at 278.

The second element of a hostile work environment claim requires a plaintiff to "offer proof that her 'workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create[d] an abusive working environment.'" *Fichter v. AMG Res. Corp.*, 528 F. App'x 225, 230–31 (3d Cir. 2013) (quoting *Abramson.*, 260 F.3d at 278–79). "The Supreme Court has 'made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view.'" *Stocker v. Green, Tweed & Co.*, 2020 WL 4437113, at *10 (E.D. Pa. Aug. 3, 2020) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' are inadequate" as they do not amount to extreme conduct. *Nitkin*, 67 F.4th at 570 (quoting *Faragher*, 524 U.S. at 788); *Kendrell v. Mattis*, 2018 WL 5785446, at *6 (E.D. Pa. Nov. 5, 2018), *aff'd sub nom. Kendrell v. Sec'y United States Dep't of Def.*, 851 F. App'x 317 (3d Cir. 2021) ("Offhanded comments, such as Herman's alleged statement that she was tired of hearing Anthony's disability

as an excuse, typically do not create a hostile work environment."). Moreover, "ordinary tribulations [of the workplace] indicating friction between a supervisor and an employee, [are] not the type of severe and pervasive abusive environment giving rise to a Title VII claim." *Stucke v. City of Philadelphia*, 685 F. App'x 150, 154 (3d Cir. 2017) (internal quotations omitted).

In support of her claim that she experienced discrimination at the Tobyhanna Army Depot, Plaintiff has put forth the following evidence:

- At a staff meeting where Plaintiff was the only employee present under the age of forty, Verbonitz "complained that Tobyhanna employees who were nearing retirement were hurting Tobyhanna Army Depot . . . by using their sick leave up before they retired." Arnold Dep. Tr., 139: 17-22, 95:25-96:24, ECF No. 47-4.
- When Plaintiff approach Verbonitz to inform her that her husband was now working for a contractor of the Army Depot, Verbonitz told her that she had no right to "do that without getting her permission" and "[she] did this for the money." *Id*. at 79:8-10, 21-22.
- Plaintiff was counseled by Verbonitz regarding her "terrible leave record" and how she was "loafing." *Id*. at 113:20-114:3.
- Verbonitz attempted to put Plaintiff on a leave restriction because of this perceived "terrible leave record," but the head of management employee relations informed Verbonitz "that wasn't an option" upon learning that Plaintiff's use of sick leave was for legitimate medical reasons. *Id*. at 120:3-7, 94:15-25.
- Verbonitz told Plaintiff she was required to schedule sick leave two weeks in advance. ECF No. 50-1, at 10; SUMF, at ¶ 320(d).
- Plaintiff's co-worker reported witnessing Verbonitz treat Plaintiff "in a rude and condescending manner on various occasions." Pl.'s App'x 20, ECF No. 50-4.
- Testimony from a prior secretary at the Depot which observes that Verbonitz was "a little bit more tougher on [Plaintiff] than she was on everybody else" and "questioned her a little bit more on what she was working on." Cheesman Dep. Tr., 116:20-117:2, ECF No. 47-8.
- Verbonitz "lectured Plaintiff about the MANNER in which one should utilize annual leave" and "[i]n at least one staff meeting, Verbonitz stated that sick time should be used for sickness, 'and not for headaches.'" Pl.'s App'x 34, ECF No. 50-4, at ¶ 22.
- "Verbonitz at times would arbitrarily deny leave." *Id*. at ¶ 28.
- Plaintiff "was accosted at the doorway to her office before her start time" for not arriving early enough to work. *Id*. at ¶ 8.

In support of her claim that she experienced discrimination at the SDDC, Plaintiff has put forth the following evidence: [3]

- While Plaintiff was on worker's compensation for a foot injury that left her unable to work, her supervisor Hayes "demand[ed] that she supply summaries of each and every medical visit which she attended within 30 minutes of the conclusion of the appointment." ECF No. 50-1, at 13.
- Management submitted her medical records to an Air Force physician who was not associated with her worker's compensation claim without receiving written permission from Plaintiff to assess whether she could perform the essential functions of her job in person. *Id.*; SUMF, at ¶ 275.

At the outset, the Court notes that many of the instances of Defendant's alleged conduct lack in evidence of a discriminatory animus, as Plaintiff has not shown that her age or disabilities were a substantial factor in each of these actions. However, even assuming all of these instances at the Depot and the SDDC were motivated by Plaintiff's age and disability, and construing all facts in Plaintiff's favor, Plaintiff's hostile work environment claims still fail because she has not established that the alleged discrimination was severe or pervasive. Although Plaintiff makes the broad assertion that the alleged discriminatory conduct from Verbonitz was ongoing for almost the entirety of her employment at the Depot, she has only proffered a handful of instances of discrimination over the course of her seven years there. Because these alleged discriminatory comments were made so infrequently, no reasonable jury would be able to conclude that "comments related to disability permeated [Plaintiff's] workplace" and the harassment she endured was sufficiently pervasive to create an abusive working environment. *Woods*, 659 F. Supp. 3d at 545.

---

[3]    The Court previously dismissed Plaintiff's failure to accommodate claims with prejudice and will not entertain arguments raised in Plaintiff's brief related to these claims. ECF No. 14, at 7.

Additionally, the alleged instances of discrimination put forth by Plaintiff "are not of the severity contemplated [by Title VII] in that the alleged [discriminatory conduct], if not pervasive, would not 'contaminate an environment.'" *Id.* (quoting *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017)). Verbonitz's comments criticizing Plaintiff's use of sick leave for medical appointments or headaches, though offensive, were neither physically threatening nor humiliating. The alleged discriminatory conduct at the Depot resembles the ordinary tribulations of a workplace where there is friction between a supervisor and an employee. Title VII is intended to protect employees from extreme and abusive conduct, it does not "guarantee a Utopian workplace." *Fichter,* 528 F. App'x at 231 (quoting *Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 600 (6th Cir.2007)). Even drawing all factual inferences in Plaintiff's favor, the offhanded comments about Plaintiff's "terrible leave record" and tardiness, and the isolated incidents confronting Plaintiff about her husband's new employment position or expressing general disagreement with employees approaching the age of retirement using up their sick leave time were insufficient to alter the conditions of her employment. For example, although Verbonitz was concerned with Plaintiff's use of sick leave, she did not prevent her from taking it altogether. She merely placed a limitation on Plaintiff's use of sick leave by requiring her to provide advance notice of her intent to use it in non-emergency situations. Even if Verbonitz was tougher on Plaintiff than other employees and acted in a rude and condescending manner towards Plaintiff only, the Court is not convinced that these actions were motived by invidious animus, especially considering Verbonitz was the only other employee at the Depot that belonged to the same protected classes as Plaintiff. However, even if the Court were to find these actions were motivated by discriminatory intent, when considering the totality of the circumstances, it would still reach the same conclusion— that Verbonitz's conduct was not extreme enough to create a hostile work environment.

The same goes for the actions of Plaintiff's superiors at the SDDC. Given that Plaintiff worked for the SDDC for nearly four years and has only proffered two instances of alleged discrimination, the Court finds the discrimination occurred so infrequently that it could not have permeated her workplace and cannot be considered pervasive. The acts of asking for her medical documentation to substantiate a claim for worker's compensation and submitting her medical records to an outside physician for review may have been offensive to Plaintiff, but were not physically threatening or humiliating such that they would have contaminated her work environment. All in all, the conduct complained of at the Depot and the SDDC is not the type of severe and pervasive discriminatory behavior that gives rise to a hostile work environment claim, nor is it the type of conduct which a reasonable person would find hostile or abusive. Because a required element of a prima facie case of hostile work environment has not been satisfied, the Court does not need to reach the remaining elements. Plaintiff's hostile work environment claims are dismissed.

## V.    CONCLUSION

Plaintiff has not established that she suffered intentional discrimination based on her age and disabilities that was severe and pervasive at the Depot and the SDDC. Therefore, she cannot prevail in her claims of hostile work environment. Defendant's motion for summary judgment (ECF No. 47) is granted. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

13